IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ELLEN W.,[1] | ) |
| | ) |
|       **Plaintiff,** | ) |
| | ) No. 19 C 03866 |
|     v. | ) |
| | ) Magistrate Judge Beth W. Jantz |
| KILOLO KIJAKAZI, Commissioner of Social Security,[2] | ) |
| | ) |
|       **Defendant.** | ) |
| | ) |

**MEMORANDUM OPINION AND ORDER**

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Ellen W.'s application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [dkt. 11, Pl.'s Mot.] is denied, and the Commissioner's cross-motion for summary judgment [dkt. 18, Def.'s Mot.] is granted.

---

[1] In accordance with Internal Operating Procedure 22, Privacy in Social Security Opinions, the Court refers to Plaintiff by her first name and the first initial of her last name.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been substituted for her predecessor.

## BACKGROUND

### I.  Procedural History

On August 3, 2011 Plaintiff filed a claim for DIB and SSI, alleging disability since June 1, 2011 due to multiple sclerosis. [Dkt. 10-1, R. at 70.] Plaintiff's claim was denied initially and again upon reconsideration. [R. 70-71.] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 5, 2013. [R. 33-69.] Plaintiff personally appeared and testified at the hearing and was not represented by counsel. [R. 33-69.] Vocational expert ("VE") Lee Knutson also testified. [R. 65.] On September 13, 2013, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 28.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 1.] Plaintiff then appealed the ALJ's decision to the United States District Court for the Northern District of Illinois, which initially affirmed the ALJ's decision. *See Weber v. Colvin*, Case No. 15-cv-01233 (N.D. Ill.), Dkt. 20. While the decision was on appeal, the parties agreed that the case should be remanded to the Social Security Administration for a new hearing before the ALJ; the District Court amended its judgment accordingly. *Id*. at Dkt. 35. On August 28, 2018, the ALJ conducted a new hearing at which Plaintiff testified, now represented by counsel. [R. 320.] Medical experts Subramaniam Krishnamurthi, M.D. and Ellen Rozenfeld, Ph.D. testified at the hearing, as did vocational expert Richard Fisher. [R. 320-385.] On September 7, 2018, the ALJ again denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. [R. 404.] The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner. [R. 306.]

## II. The ALJ's Decision

The ALJ analyzed Plaintiff's claim in accordance with the Social Security Administration's five-step sequential evaluation process. [R. 390.] The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of June 1, 2011 through her date last insured of September 30, 2012. [R. 391.] At step two, the ALJ concluded that Plaintiff had the following severe impairments: multiple sclerosis. [R. 391.] The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal one of the Social Security Administration's listings of impairments (a "Listing"). [R. 395.] Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: she could occasionally stoop, crouch, crawl, climb and balance. [R. 395]. At step four, the ALJ concluded that Plaintiff would be able to perform her past relevant work as an ice-skating instructor [R. 402.] At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act. [R. 402-404.]

## DISCUSSION

## I. Judicial Review

Under the Social Security Act, a person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine disability within the meaning of the Social Security Act, the ALJ conducts a five-step inquiry, asking whether: (1) the claimant has performed any substantial gainful activity during the period for

3

which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the RFC to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a). "A finding of disability requires an affirmative answer at either step three or step five." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four, after which at step five the burden shifts to the Commissioner." *Id.*

Because the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner and is reviewable by this Court. 42 U.S.C. § 405(g). *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). The Court plays an "extremely limited" role in reviewing the ALJ's decision. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). Judicial review of the ALJ's decision is limited to determining whether it adequately discusses the issues and is based upon substantial evidence and the proper legal criteria. *Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014). While this review is deferential, "it is not intended to be a rubber-stamp" on the ALJ's decision. *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). The Court will reverse the ALJ's finding "if it is not supported by substantial evidence or if it is the result of an error of law." *Id.*, at 327.

4

The ALJ has a basic obligation both to develop a full and fair record and to "build an accurate and logical bridge between the evidence and the result [so as] to afford the claimant meaningful judicial review of the administrative findings." *Beardsley*, 758 F.3d at 837. Although the ALJ is not required to mention every piece of evidence in the record, the ALJ's analysis "must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001); *accord Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). The ALJ "must explain [the ALJ's] analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014) (quoting *Briscoe*, 425 F.3d at 351). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder*, 529 F.3d at 413.

## II. Analysis

Plaintiff argues that the ALJ committed reversible error by: (1) improperly evaluating medical opinions; (2) failing to account for Plaintiff's non-exertional deficits in crafting Plaintiff's RFC; and (3) failing to explain her rejection of Plaintiff's subjective statements. For the following reasons, the Court disagrees.

### A. The ALJ's Evaluation of Medical Opinions is Supported by Substantial Evidence

Plaintiff first argues that the ALJ reversibly erred by improperly evaluating medical opinions with respect to Plaintiff's alleged cognitive impairment. Specifically, Plaintiff maintains that the ALJ erred by crediting the opinions of Dr. Ellen Rozenfeld, Ph.D., a non-examining expert, over the opinion of Plaintiff's treating neurologist, Dr. Daniel Wynn, M.D., and Plaintiff's examining neuropsychologist, Dr. Michael DiDomenico, Psy.D. The Court disagrees.

"An ALJ should generally give controlling weight to a treating physician's opinion if it is supported by medical findings and consistent with the record, *see* 20 C.F.R. § 404.1527(c)(2), but otherwise the ALJ may discount it." *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).[3] "Once well-supported contrary evidence is introduced . . . a treating physician's opinion becomes just another piece of evidence for the ALJ to evaluate." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). Among the factors an "ALJ must consider in weighing a medical opinion after deciding not to give a treating source's opinion controlling weight are the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion throughout the record." *Ray v. Saul*, 861 F. App'x 102, 105 (7th Cir. 2021); *see also* 20 C.F.R. § 404.1527(c). Moreover, an examining physician's opinion is generally given more weight than a non-examining physician, *see* 20 C.F.R. § 404.1527(c)(1), and an "ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

First, the ALJ did not commit reversible error in assigning little weight to the opinion of Dr. DiDomenico. Dr. DiDomenico, a neuropsychologist, examined Plaintiff once (over two appointments) prior to the date last insured, on December 30, 2011 and January 10, 2012. After running a battery of tests, Dr. DiDomenico noted that Plaintiff has a verbal IQ of 109, a performance IQ of 92, and a full scale IQ of 102, all within the average range. Dr. DiDomenico

---

[3] The "treating physician rule" has been rescinded for claims filed after March 27, 2017 "to eliminate the 'controlling weight' instruction." *Kaminski v. Berryhill*, 894 F.3d 870, 874, n.1 (7th Cir. 2018) (comparing 20 C.F.R. § 404.1527(c) (for claims filed before March 27, 2017), with 20 C.F.R. § 404.1527(c) (for claims filed on or after March 27, 2017)).

concluded that "[n]europsychological testing strongly suggests [Plaintiff has] changes in cognition which included difficulty with retrieval, language articulation which included sluggishness in verbal presentation, and difficulty with word finding. These problems appear to be related to a progression of her neurological difficulties (MS)." [R. 288-89]. Dr. DiDomenico further noted that "[d]eficits were observed on tasks that load heavily upon attention, concentration, short term memory and certain aspects of language, especially retrieval functions as she was slowed on fluency tests and demonstrated mild anomia in the absence of aphasia." [R. 289.]. Dr. DiDomenico also observed a "tremor and difficulty with all visuomotor and visuospatial tasks," and noted that Plaintiff "had difficulty with all speed dependent tasks." [R. 289]. In his recommendations section, Dr. DiDomenico explained that Plaintiff "appears to be a viable candidate for long-term disability," and he noted that "on-going cognitive rehabilitative therapy may assist the patient in maintaining and improving cognitive functions." [R. 289.]

At the Plaintiff's second hearing, the ALJ called for the testimony of Dr. Ellen Rozenfeld, Ph.D., to testify regarding Dr. DiDomenico's report. Dr. Rozenfeld is a psychologist, but not a neuropsychologist. Dr. Rozenfeld testified that she did not see any corroboration in the medical record for Dr. DiDomenico's opinions that Plaintiff suffered from a mental impairment. [R. 368.] Dr. Rozenfeld further testified that although Dr. DiDomenico recommended cognitive rehabilitation and repeat neuropsychological testing a year later, Plaintiff never pursued cognitive rehabilitation or repeat testing. Dr. Rozenfeld also observed that although Dr. DiDomenico noted that Plaintiff demonstrated difficulty with all tests that were nonverbal, speed dependent, and required a motor response, Plaintiff's performance IQ test—which was speed dependent and required a motor response—was in the average range. [R. 368-369.] Because Dr. DiDomenico did not provide scores for any other test he administered and because of other reasons cited by Dr.

7

Rozenfeld, Dr. Rozenfeld testified that she did not understand Dr. DiDomenico's basis for concluding that Plaintiff had severe cognitive impairments. [R. 368-370.] Dr. Rozenfeld identified several inconsistencies in Dr. DiDomenico's report, including contradictory statements with respect to Plaintiff's attention difficulties and experience of depression, and the fact that Dr. DiDomenico concluded that Plaintiff had a decline in cognitive functioning without any evidence of Plaintiff's baseline level of cognitive functioning. [R. 369-370.] Ultimately, Dr. Rozenfeld concluded that "there are so many inconsistent statements in [Dr. DiDomenico's report] that I personally can't say that a cognitive disorder is supported," and that she did not "see necessarily documentation of significant cognitive deficits in other exhibits in the file." [R. 370.] She furthered that she could not say that the record supports a medically determinable cognitive impairment. [R. 370.]

The ALJ gave little weight to Dr. DiDomenico's opinion for numerous reasons. The ALJ credited Dr. Rozenfeld's testimony that Dr. DiDomenico inferred a significant decline from premorbid functioning without any evidence of Plaintiff's premorbid functioning from which Dr. DiDomenico could imply a decline. [R. 393]. The ALJ further noted that Plaintiff described much greater debility to Dr. DiDomenico than she did to other physicians, with citations to several contemporaneous records from her neurologist (Dr. Wynn) and primary care physician (Dr. Economos) in which Plaintiff did not report symptoms and limitations nearly as significant as those she reported to Dr. DiDomenico. The ALJ noted that Dr. DiDomenico was an examining, not a treating, provider, that Plaintiff did not pursue any of Dr. DiDomenico's recommendations (*i.e.*, for re-evaluations to determine further decline and for rehabilitative cognitive therapy), and that neither Dr. Wynn nor Dr. Economos encouraged her to follow Dr. DiDomenico's recommendations. The ALJ further noted that although Dr. Rozenfeld did not have the opportunity

8

to examine the Plaintiff, she did observe the Plaintiff and listen to her testimony, and she had the opportunity to review the entire record. [R. 394.] Finally, the ALJ explained that the expanded record shows no evidence of behavioral health decompensation, with primary care treatment records repeatedly reflecting intact memory, insight and judgment, normal mood and affect, and normal speech, rate and tone, despite the lack of any cognitive or behavioral health intervention or medication. [R. 394.].

The ALJ did not reversibly err in assigning little weight to Dr. DiDomenico's opinions. Plaintiff argues that Dr. Rozenfeld testified that she was unable to understand Dr. DiDomenico's report in several respects, so the ALJ erred by relying on her opinions. But, as detailed above, Dr. Rozenfeld provided several cogent reasons for her inability to understand Dr. DiDomenico's conclusions, *i.e.*, why she did not believe Dr. DiDomenico's report established that Plaintiff suffered from a cognitive disability. She identified numerous inconsistencies in Dr. DiDomenico's report, noted that Dr. DiDomenico could not infer cognitive decline without evidence to establish Plaintiff's baseline ability, noted that the raw testing results present in the report supported average functioning, and explained that Plaintiff never pursued Dr. DiDomenico's recommendations. [R. 368-370.] The ALJ reasoned that Dr. Rozenfeld's assessment of Dr. DiDomenico's opinion was consistent with the record, supported by extensive citations to the Plaintiff's treatment records from different physicians, and Plaintiff offers no basis to conclude that the ALJ's assessment of the record is incorrect or unduly dismissive of any particular line of evidence. *See, e.g.*, *Pavlicek v. Saul*, 994 F.3d 777, 782 (7th Cir. 2021) (substantial evidence supported discounting even *treating* physician's opinion, where regular notes "reflected essentially normal cognition"). Moreover, the ALJ considered each of the applicable factors—the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests

9

performed; and the consistency and support for the physician's opinion throughout the record—in assessing Dr. DiDomenico's opinion. Plaintiff simply asks the Court to reweigh the evidence with respect to Dr. DiDomenico's opinion, but that is not this Court's function.[4] *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it."). As laid out above, substantial evidence supports the ALJ's decision to assign little weight to Dr. DiDomenico's opinion.

Plaintiff next argues that the ALJ improperly assigned little weight to Dr. Wynn's assessments of Plaintiff's alleged cognitive impairments. Dr. Wynn's treatment notes following Plaintiff's examination by Dr. DiDomenico notes that Dr. DiDomenico found her to be cognitively disabled and unable to work. [R. 296.]. In addition, in 2018, Dr. Wynn completed an RFC assessment form that indicated plaintiff had a cognitive impairment, among other impairments, and that Plaintiff accordingly had a variety of restrictions that are incompatible with full time work (*e.g.*, plaintiff could efficiently perform work for less than 50% of the day on a sustained basis, and would be unable to complete an 8-hour work day 5 or more days per month). [R. 641-644.] Dr. Wynn indicated Plaintiff's impairments, symptoms and limitations started over ten years prior to his evaluation, and thus reached into the period prior to the September 2012 date last insured. [R. 641.]. The ALJ assigned little weight to Dr. Wynn's opinion, explaining that his notes regarding Plaintiff's cognitive function do not reflect his personal observations of Plaintiff's

---

[4] Plaintiff also argues that there is an inconsistency between Dr. Rozenfeld's opinion and the ALJ's inferences therefrom. According to Plaintiff, Dr. Rozenfeld testified only that Plaintiff did not have a severe cognitive impairment, but the ALJ concluded that Plaintiff had no medically determinable cognitive impairment whatsoever. But, as the Commissioner points out, this argument is based on a misreading of the hearing transcript; Dr. Rozenfeld did in fact testify that she could not support a conclusion that Plaintiff had any medically determinable cognitive impairment. [R. 371.]

functioning, but instead refer back to Dr. DiDomenico's report. The ALJ further explained that notwithstanding Dr. Wynn's dire assessment of plaintiff's cognitive abilities, he does not appear to have referred Plaintiff for any treatment to help slow her cognitive decline or for a follow-up evaluation, as Dr. DiDomenico recommended. Ultimately, the ALJ rejected Dr. Wynn's opinions with respect to Plaintiff's alleged cognitive impairment because it was seemingly based solely on Dr. DiDomenico's report, to which she assigned very little weight.

The ALJ's assessment of Dr. Wynn's opinion was supported by substantial evidence. Plaintiff argues that Dr. Wynn is entitled to deference as her longtime treating neurologist, but the ALJ recognized and considered the nature and length of their doctor-patient relationship, as well as Dr. Wynn's specialty, in assigning weight to Dr. Wynn's opinions. An ALJ is not required to reflexively accept the opinion of a treating physician even where that opinion is inconsistent with the record or based entirely on evidence properly accorded little weight. *See, e.g., Deborah A. v. Saul*, No. 19-CV-6628, 2021 WL 5882137, at *2 (N.D. Ill. Dec. 13, 2021) ("[J]udges are not required to give great weight to treating physicians if the physicians' opinions are inconsistent with the record or if the claimant's symptoms improve with treatment.") Moreover, Plaintiff concedes that Dr. Wynn's opinions with respect to her cognitive functioning are an "interpretation" of Dr. DiDomenico's findings, [Pl.'s Br. at 12]—findings which, as the Court noted above, the ALJ permissibly assigned very little weight. The ALJ thus did not reversibly err in assigning little weight to Dr. Wynn's opinion that Plaintiff had a cognitive impairment. *See Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) ("We uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'")

### B. The ALJ Permissibly Assessed Plaintiff's Subjective Symptoms

Plaintiff also argues that the ALJ improperly failed to credit her testimony regarding her fatigue at the second hearing. At that hearing, which occurred in 2018, Plaintiff testified that prior to the date last insured, she would need to rest for two days prior to working as an ice-skating instructor, and that she had to take regular naps throughout the day when she engaged in activities due to fatigue. [R. 340-341.] Plaintiff testified that her naps lasted a half hour or 40 minutes. [R. 342-343.] The ALJ determined, however, that the severity and limiting effects of Plaintiff's symptoms, including fatigue, were not entirely consistent with or supported by the evidence. With respect to Plaintiff's fatigue, the ALJ explained that the Plaintiff reported much greater limitations that she had before the date last insured at her 2018 hearing than she did at her initial 2013 hearing, and the ALJ concluded that Plaintiff's memory of the relevant period would have been fresher at the initial hearing. [R. 396.] At that hearing, Plaintiff did not report a need for naps throughout the day, or for multiple days of rest in advance of a single day of work. [R. 39-59.] The ALJ also noted Plaintiff's regular daily activities prior to the date last insured, including exercising 30 minutes to an hour three times a week, performing household chores, running errands, gardening, taking her two dogs out, scrapbooking, and helping to clean her mother's house. [R. 396.] The ALJ further cited three trips that Plaintiff took before or shortly after the date last insured, and considered that Plaintiff reported not being able to engage in certain activities on the vacations. [R. 396.] With respect to the objective medical record, the ALJ explained that while Plaintiff experienced a symptomatic increase around 2006, she responded well to a medication adjustment. [R. 397.] The ALJ further noted that Plaintiff's treatment notes during the relevant period and afterward reflected primarily typical bi-annual visits, with no intervening need for emergent care or hospitalization, and no significant changes to Plaintiff's treatment course. [R. 399.] The ALJ

12

also considered Plaintiff's response, when asked why she could not work a seated job during the relevant period, that she had bladder and bowel incontinence that she did not report to her doctors. [R. 398.]

"In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations . . . and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)). "So long as an ALJ gives specific reasons supported by the record," the Court "will not overturn his credibility determination unless it is patently wrong. *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). "Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying." *Id*.

Plaintiff argues that the ALJ improperly relied on inconsistencies between Plaintiff's 2013 and 2018 testimony, asserting that "the ALJ did not question Plaintiff, at the initial hearing, about her fatigue, need for naps, or concentration difficulties." Pl's Br., Dkt. 11 at 14. But this misses the mark: at the initial hearing, the ALJ asked the Plaintiff to identify her symptoms and to describe her daily routines, and Plaintiff did not report a need for frequent breaks or naps due to fatigue. [R. 48-56.] The ALJ reasonably determined that Plaintiff overstated her limitations at the 2018 hearing when her testimony was inconsistent with her 2013 testimony, which was closer in time to the September 2012 date last insured. Plaintiff also argues that the ALJ's assessment of the objective medical record with respect to Plaintiff's fatigue was flawed, but Plaintiff fails to identify any particular line of evidence that the ALJ ignored in assessing the severity of Plaintiff's fatigue. The ALJ considered the appropriate factors—Plaintiff's testimony about her level of fatigue and attendant limitations, daily activities, and medication and other treatment—and permissibly

13

concluded that the severity and limiting effects of Plaintiff's alleged symptoms were not entirely consistent with or supported by the evidence. The Court cannot say that the ALJ's determination was "patently wrong." *See, e.g., Frank B. v. Saul*, No. 18 C 2099, 2019 WL 6307651, at *11 (N.D. Ill. Nov. 25, 2019) (affirming where "the ALJ repeatedly considered Plaintiff's claims of fatigue and the evidence relating to those complaints, including Plaintiff's testimony, but properly found that the record supports no greater limitations in Plaintiff's RFC.").

### C. The ALJ's RFC is Supported by Substantial Evidence

Plaintiff also argues that the ALJ impermissibly failed to account for her cognitive deficits and fatigue in crafting the RFC. According to the Plaintiff, the ALJ violated the remand order by failing to account for the litany of cognitive deficits identified in Dr. DiDomenico's report. In support of this argument, Plaintiff cites to the parties' joint motion for an indicative ruling in Plaintiff's prior appeal to the Northern District of Illinois after the initial denial of her claim. [R. 420.] But the motion belies plaintiff's argument, as it required the ALJ to "call upon a psychological or psychiatric medical expert to assist in interpreting the significance of the findings in Dr. Di Domenico's neuropsychological report," or, "in the alternative . . . explain how she considered [a variety of] findings from the neuropsychological report[.]" [R. 420 .] The ALJ did not flout the remand order because, as discussed above and as directed by that order, she called on a psychological expert (Dr. Rozenfeld) to assist in interpreting Dr. DiDomenico's report, and permissibly assigned the DiDomenico report little weight.

Plaintiff also argues that even if she did not have a medically determinable cognitive impairment, she nonetheless had cognitive symptoms that arose from her multiple sclerosis for which the ALJ should have accounted. The only support for the alleged cognitive symptoms that Plaintiff identifies is a series of forms from Dr. Wynn—most of which are from years after the

14

date last insured—in which Dr. Wynn checked off that plaintiff had various cognitive abnormalities. *See* Pl's Br. at 12-13 (identifying Dr. Wynn's records). As explained above, however, the ALJ permissibly assigned little weight to Dr. Wynn's opinions regarding Plaintiff's cognitive abilities because Dr. Wynn appeared to rely entirely on Dr. DiDomenico's report, because Dr. Wynn never referred Plaintiff for behavioral or cognitive therapy or follow up testing (notwithstanding Dr. DiDomenico's recommendations), and because Dr. Wynn never prescribed Plaintiff any antidepressant or anxiolytic medications. [R. 400-401.] Plaintiff identifies no evidence beyond Dr. Wynn's records that the ALJ purportedly failed to consider, and this Court may not reweigh the evidence with respect to Plaintiff's cognitive condition. Having permissibly assigned little weight to Dr. Wynn (and Dr. DiDomenico's) opinions, the ALJ was not required to account for Plaintiff's alleged cognitive symptoms in crafting the RFC.

Finally, Plaintiff argues that the ALJ did not properly account for Plaintiff's fatigue. Citing Plaintiff and her husband's testimony, the ALJ limited Plaintiff to light work with reduced tolerance for postural movements, but rejected Plaintiff's assertion that she would need to take breaks beyond those compatible with full time work. [R. 399.] Plaintiff argues that the ALJ's failure to build a need for additional breaks into the RFC constitutes reversible error. But as explained above, the ALJ provided sufficient reasons to discount Plaintiff's testimony with respect to her fatigue and need for extra breaks. The only evidence Plaintiff identifies that the ALJ purportedly ignored are doctors' notes and a questionnaire indicating that Plaintiff suffered from fatigue (most of which are from well after the date last insured), [Pl's Br. at 13], and indeed, the ALJ credited the fact that Plaintiff suffered from fatigue and accordingly limited the Plaintiff to light work with reduced tolerance for postural movements. [R. 395, 399.] None of the records identified by the Plaintiff suggest that the ALJ ignored a line of evidence indicating that Plaintiff's

15

experience of fatigue required more breaks. And, as noted above, the ALJ considered the appropriate factors in concluding that Plaintiff's testimony regarding the severity and limiting effects of her fatigue was not entirely consistent with or supported by the evidence.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [11] is denied, and the Commissioner's motion for summary judgment [18] is granted. The Court affirms the Commissioner's final decision.

**SO ORDERED.**

Date: 2/4/22

BETH W. JANTZ
United States Magistrate Judge